IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KRISTY LAW, QUINCY BULLARD, JOHN HALL, FRANCES PERRY, RITA LEE on behalf of themselves and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN CAPITAL STRATEGIES, LTD.,<br><br>Defendant. | Case No.: 3:05-0836 (Echols)<br>(Middle District of Tennessee)<br>Miscellaneous File Number<br><br>Miscellaneous Action on a Rule 45<br>Subpoena in a Civil Case |

## MOTION BY NONPARTY FOR PROTECTIVE ORDER RELATING TO SUBPOENA

Non-Party Witness, Pachulski Stang Ziehl Young Jones & Weintraub LLP ("PSZYJW"), hereby requests the issuance of a protective order as to that subpoena served upon it by Plaintiffs' counsel in the above-captioned civil lawsuit pending in the Middle District of Tennessee on the grounds that same is overbroad, burdensome, oppressive, and patently violative of the attorney-client privilege and work product exception to discovery. In furtherance of the motion, PSZYJW represents as follows:

### Summary of Facts

1.    Plaintiffs Kristy Law, et al., on behalf of themselves and all other persons similarly situated, filed a class action lawsuit in the Middle District of Tennessee against American Capital Strategies, Ltd. ("ACS") seeking damages for alleged violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et. Seq. (the "WARN Act") relating to the termination of employees of Service Transport, Inc. ("STI") a subsidiary of S-Tran

Holdings, Inc., an entity in which ACS holds an interest. Plaintiffs' employer, Service Transport, Inc., is not a party to the litigation.

2.       Service Transport, Inc. and its parent, S-Tran Holdings, Inc., are debtors in chapter 11 cases filed in the Bankruptcy Court for the District of Delaware, jointly administered under case number 05-11391(KJC) on May 13, 2005 (collectively the "Debtors"). PSZYJW is bankruptcy counsel for the Debtors and is also not a party to the litigation.

3.       After objecting to a previously issued subpoena by Plaintiffs out of the wrong court, on August 15, 2006, counsel for Plaintiffs issued a new subpoena out of the United States District Court, District of Delaware, directed to and served upon PSZYJW on August 15, 2006. A true and correct copy of the subpoena is attached hereto and incorporated herein by the reference as Exhibit "A."

4.       The subpoena seeks production of three categories of communications from PSZYJW, including communications between PSZYJW and its client, Service Transport, Inc. The subpoena, as a whole, and each of its categories, are overbroad, burdensome and oppressive, and as to categories one and two, also patently seek documents protected by the attorney-client privilege and work product exceptions to discovery.

5.       The Debtors' estates presently lack the liquidity to fund the estimated $52,500 in expenses and attorney and paralegal time required to comply with subpoena and prepare a privilege log, and such costs should not be required to be borne by PSZYJW, a non-party witness. Additionally, a portion of the documents are in possession of the Defendant in this action, ACS.

6.      For the reasons set forth hereinbelow, the subpoena should either be quashed or limited in scope, and if limited, the costs of production and preparation of a privilege log (if the categories seeking attorney-client privilege and work product excepted documents remain in any degree) should be shifted to Plaintiffs.

### Issuance of a Protective Order is Warranted

7.      Federal Rule of Civil Procedure 26(c) provides that, ". . . the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (1)     That the disclosure or discovery not be had;
>
> (2)     That the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;...
>
> (3)     That certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;..."

8.      The moving party must make a showing of a particular and specific need for the order. *Pearson v. Miller,* (3d Cir. 2000) 211 F.3d 57, 72.  However, when discovery is sought from nonparties, a protective order is more readily granted. *See Dart Industries Company, Inc. v. Westwood Chemical Company, Inc.*, 649 F.2d 646 (9th Cir. 1980).

9.      As stated in *Dart Industries Company, Inc. v. Westwood Chemical Company, Inc.*, "While discovery is a valuable right and should not be unnecessarily restricted, *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 232 (9th Cir. 1979), the' necessary' restriction may be broader when a nonparty is the target of discovery.  As one district has noted, '(t)here

appear to be quite strong considerations indicating that discovery would be more limited to

protect third parties from harassment, inconvenience, or disclosure of confidential documents.'

*Collins and Aikman Corp. v. JP Stevens & Co., Inc.*, 51 F.R.D. 219, 221 (D.S.C. 1971)." 649

F.2d. at 649.

      10.    *See also Thomson v. Glenmede Trust Company*, 1995 WL 752429 (E.D.

Pa.), at footnote 3:

> "Although the federal courts have adopted liberal
> discovery rules, district courts, nevertheless, are
> empowered with 'broad discretion to manage
> discovery.' *Sempier v. Johnson & Higgins*, 45 F.3d
> 724, 734 (3d Cir. 1995). In particular, federal
> courts have imposed broader restrictions on the
> scope of discovery when a non-party is targeted....
> Accordingly in *Tetratek* [1992 WL 202169 (E.D.
> Pa. Aug 12 1992)], Judge Buckwalter noted that
> '[t]he rule is thus established that nonparties to
> litigation enjoy greater protection from discovery
> than normal parties.' 1992 WL 202169 at
> *1(quoting *Laxaklt v. McCarthy*, 116 F.R.D. 455,
> 458 (D.Nev. 1986))."

1995 WL 752429 (E.D. Pa.).

      11.    The subpoena requests production of communications within the

possession of PSZYJW. The majority of the communications are in the form of emails sent and

received through the firm's "Outlook" system. Each of the five attorneys who would have

generated and received emails during the period encompassed by the subpoena report that they

sent or received at least 2,000 emails which would have to be reviewed to cull for responsive

information. In addition, the emails of one of the attorneys were archived off of the "Outlook"

system on to back-up tapes from which the data must be recreated.

12.    The most efficient method to retrieve the archival information and to gather and review the emails would be to retain the services of an outside vendor to retrieve, sort, and download the data into a search program known as Summation at a cost estimated by the vendor to be $14,250.  Thereafter, it is estimated that approximately 100 hours of attorney time and an additional 20 hours paralegal time would be required to review and sort all of the emails and create a privilege log of all attorney/client and otherwise protected communications, at an additional expense of no less than $38,000 for a total projected cost of $52,500.

13.    The Debtors' estates presently lack sufficient liquidity to fund such a production, let alone the creation of a privilege log as to communications between them and PSZYJ.[1]  As a non-party, PSZYJW should not be required to incur the expense of the production.

14.    If the retrieval of computer data is shown to be unreasonable, burdensome or costly, the court may grant a protective order, including an order directing the party seeking discovery to pay all or some portion of the costs involved.  *Simon Property Group LP v. mySimon, Inc.*, 194 F.R.D. 639 (S.D. Indiana 2000), *In re Puerto Rico Elec. Power Authority*, 687 F.2d 501 (1st Cir. 1982).  The two most important factors in determining whether cost shifting is appropriate is the extent to which the request is specifically tailored to discover relevant information and the availability of such information from other sources.  *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003).

---

[1]  Although normally a party asserting a privilege must produce a privilege log pursuant to F.R.C.P. Rule 26(b)(5), it is unclear whether the Rule applies to non-parties.  In any event, a log may not be required if the records are voluminous and the items can be described by category, here "communications."  See Adv. Comm. Notes to 1993 Amendments to .F.R.C.P. 26(b).

15.     The subpoena is not specifically tailored to discover relevant information and much of the information is available from another source: namely Defendant ACS, the Defendant in the litigation.

16.     The specific categories set forth in the Subpoena and the bases for the objections are set forth as follows:

Category 1: "All communications related to the termination of the employment of any of the employees of Service Transport, Inc., in or about May 5, 2005, including, but not limited to, notices of termination and communications with American Capital Strategies, Ltd. ("ACAS") (sic) that refer to such communications or terminations, during the one year period ending on June 1, 2005."

Basis for Objection: The request is overbroad, burdensome and oppressive and not reasonably calculated to lead to the discovery of admissible evidence and constitutes an undue burden upon the bankruptcy estates and PSZYJW, such that the cost of even preparing a privilege log is prohibitive and manifestly unjust.

In addition, to the extent that the request seeks communications with Defendant ACS, a party to the litigation, it should be obtained from that entity and not at the expense and burden to non-parties. Additionally, in that the request does not limit the identities of recipients and senders of communications, the request is violative of the attorney client privilege and work product exception to discovery to the extent it could be read to include communications between PSZYJW and the Debtors.

Category 2: "All communications, including emails, between the agents, employees and representatives of Service Transport, Inc. and the law firm of PSZYJW relating to the bankruptcy filing of Service Transport, Inc. during the one year period ending on May 13, 2005."

Basis for Objection: The request is overbroad, burdensome and oppressive and not reasonably calculated to lead to the discovery of admissible evidence in that it is not limited to communications relating to the termination of employees, but rather encompasses all communications "relating to the bankruptcy filing of Service Transport, Inc."

As, if not more, importantly the request is a patent effort to violate the attorney/client privilege and work product exception to discovery in that it seeks communications between PSZYJW and its client, Service Transport, Inc. The proper scope of discovery, as defined in FRCP Rule 26(b)(1), specifically excludes privileged matter.

The request is also particularly harassing in that any response would require the preparation of a sure-to-be voluminous privilege log which cannot be afforded by the Debtors' estates and would be extremely costly and unfair to be borne by PSZYJW, especially when none of the communications will ever be admissible.

Category 3: "All communications, including emails, between the agents, employees and representatives of ACAS (sic) and the law firm of PSZYJW during the one year period ending on June 1, 2005 that refer to the bankruptcy filing of Service Transport, Inc. on May 13, 2005.

Basis for Objection: Category 3 is again overbroad, burdensome and oppressive and not reasonably calculated to lead to the discovery of admissible evidence in that its scope far exceeds communications relating to the termination of the employees of Service Transport, Inc. and seeks all communications that "refer to the bankruptcy filing of Service Transport, Inc."

Additionally, the requested communications are available from Defendant ACS, a party to the litigation, and the burden and expense required to review and produce such documents should be borne, if at all, by a party and not a non-party to the litigation.

## **Relief Requested**

17.    PSZYJW therefore request the following relief:

Category 1:  Category 1 should be deemed to exclude a request for production of communications between PSZYJW and the Debtors which were not also sent or copied to any third party and no privilege log should be required to be created as to such communications.  The costs of data retrieval and document review and production should be borne by Plaintiffs.

Category 2:  PSZYJW should not be required to respond to Category 2 and no privilege log should be required to be prepared relating to communications between PSZYJW and the Debtors.

Category 3:  Because the communications requested are equally available from ACS, a party to the litigation, they should be obtained from that entity, and PSZYJW should not be required to respond to Category 3 unless any production of such communications by ACS is shown to be deficient.

## Conclusion

For the reasons set forth hereinabove, good cause exists for the issuance of a protective order as prayed in the form of order attached hereto.

Dated: August 24, 2006

PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszyjw.com
       sselzer@pszyjw.com


Alan J. Kornfeld (CA Bar No. 130063)
Steven J. Kahn (CA Bar No. 76933)
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California 90067-4100
Telephone: (310)277-6910
Facsimile: (310)201-0760
ajk@pszyjw.com
sjk@pszyjw.com

Attorneys for Debtors and Debtors in Possession

# Exhibit A

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Delaware _____

Kristi Law, et al.

V.

American Capital Strategies, Ltd.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  Middle District of Tennessee  No.
3:05-0836 (Echols)

TO:   Pachulski, Stang, Ziehl, Young, Jones & Weintraub
c/o Sandra Selzer, Esq.
919 Market Street, 17th Floor
Wilmington, DE  19801-3023

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | |
|  | DATE AND TIME |
|  | |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

See attached

| PLACE     Steven Kortanek, Esq. Klehr, Harrison, Harvey, Branzburg & Ellers LLP, 919 North Market Street, Suite 1000, Wilmington, DE 19801 | DATE AND TIME 8/25/2006 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 8/15/06 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

STEVEN K. KORTANEK, 919 N MARKET ST, 10TH FL. WILM DE 19801

302 552 5503

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
　　　　　　　　　　DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

1. All communications relating to the termination of the employment of any of the employees of Service Transport, Inc., in or about May 5, 2005, including, but not limited to, notices of termination and communications with American Capital Strategies, Ltd ("ACAS") that refer to such communications or terminations, during the one-year period ending on June 1, 2005.

2. All communications, including emails, between the agents, employees and representatives of Service Transport, Inc. and the law firm of Pachulski, Stang, Young, Jones & Weintraub relating to the bankruptcy filing of Service Tranport, Inc. during the one-year period ending on May 13, 2005.

3. All communications, including emails, between the agents, employees and representatives of ACAS and the law firm of Pachulski, Stang, Young, Jones & Weintraub during one-year period ending on June 1, 2005 that refer to the bankruptcy filing of Service Transport, Inc. on May 13, 2005.

# UNREPORTED CASES

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1995 WL 752429 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
B. Ray THOMPSON, Jr., et al.
v.
GLENMEDE TRUST COMPANY, et al.
**No. CIV. A. 92-5233.**

Dec. 19, 1995.

MEMORANDUM AND ORDER

HUTTON, Judge.
**\*1** Presently before the Court is the Motion of
Glenmede Defendants to Compel Discovery of Non-
Party Witnesses Brown Brothers Harriman and
Rittenhouse Financial Securities, Inc., the responses
of the non-party witnesses, and the Joinder of Lawyer
Defendants in the Motion of Glenmede Defendants to
Compel Discovery of Non-Party Witnesses Brown
Brothers Harriman and Rittenhouse Financial
Securities, Inc.

### I. BACKGROUND

The factual background in this matter has been
previously discussed in the Court's Memorandum and
Order dated June 8, 1993.   The Court stated in its
opinion:
The triggering event which prompted the filing of
this diversity action involves a stock buy-back
transaction in which Oryx purchased approximately
25.3 million shares held by the trusts of which
Glenmede Trust was trustee.   Glenmede Trust held
shares of Oryx as trustee for the previously named
nine trusts.   Oryx purchased the 25.3 million shares
for $1.36 billion.   As a result of the purchase, the
market for Oryx shares began to fall.   From the date
of the purchase, September 11, 1990 to the filing of
the complaint on December 7, 1992, Oryx stock fell
from a high of approximately $54 a share to the low
to mid $20 range.   The Thompson Family alleges a
loss of approximately $80 million as a result of the
buy-back transaction.
The plaintiffs contend that the goals of the
transaction were:  (1) to divert funds improperly out
of Oryx and into the Defendant Trusts;  [and] (2) to
liquidate or diversify the Defendant Trusts' holdings

of Oryx stock and to maximize the value received for
the Defendant Trusts' holdings in Oryx....
Plaintiffs have alleged that the transaction was
instigated, devised and executed by Glenmede Trust,
its parent, defendant Glenmede Corporation, and the
Pew Defendants and the Defendant Trusts.
(Complaint, ¶ ¶ 3, 34).   The plaintiffs allege that
Glenmede Trust and Glenmede Corporation are
controlled by the Pew family.   Allegedly, the stock
transaction was detrimental to Oryx and the plaintiffs
and was extremely lucrative for Glenmede
Corporation, Glenmede Trust, the Defendant Trusts
and the Pew Defendants.   (Complaint, ¶ 43).
Plaintiffs allege that Glenmede Trust failed to advise
them before and after the transaction of its
consequences to Oryx.
According to the allegations of the complaint,
Glenmede owed fiduciary duties to plaintiffs (the
Thompson family interests) at the same time as it
owed duties to the Pew family interests.   Plaintiffs
allege that Glenmede and the Pew family interests are
commonly controlled and indivisible, making the
duties owed to plaintiffs even clearer.   Those duties
were allegedly breached when the Pew family
interests were advanced by the buy-back transaction,
and the Thompsons were ignored by Glenmede and
harmed by the transaction it precipitated.

Thompson v. Glenmede Trust Co., 1993 WL 197031,
*2 (E.D. Pa. June 8, 1993) (Hutton, J.).[FN1]

> FN1. The defendants F. John Hagele, James
> R. Lewith, Richard C. Sorlien, Franklin B.
> Holland, Edward M. Watters, III, Augustus
> S. Ballard and Robert J. Weinberg ("the
> Lawyer Defendants") previously represented

### II. DISCUSSION

Following the buy-back transaction, the plaintiffs
withdrew   their   account   from   Glenmede.
Subsequently, the plaintiffs transferred their assets to
other investment firms, including Brown Brothers
Harriman ("Brown Brothers") and Rittenhouse
Financial Securities, Inc. ("Rittenhouse").   The
Glenmede Defendants now move this Court for an
Order compelling compliance with subpoenas issued
to both Brown Brothers and Rittenhouse.   Both
Brown Brothers and Rittenhouse assert, *inter alia*,
that the requested discovery is irrelevant.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 752429 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**
                                                            Page 2

### 1. *Relevancy Objections from Non-Parties*

**\*2** As an initial matter, the Glenmede Defendants assert that a non-party does not have standing to raise a relevancy objection to a discovery request. In their motion, the Glenmede Defendants cite cases, including one decision from this district, supporting the position that non-parties do not have standing to raise a relevancy objection. *See Ghandi v. Police Dept. of Detroit,* 74 F.R.D. 115, 123 (E.D.Mich.1977); *Cooney v. Sun Shipbuilding & Drydock Co.,* 288 F.Supp. 708, 717 (E.D.Pa.1968). There are, however, rulings that have reached the opposite conclusion, including a fairly recent decision from this district. *See Tetratec Corp. v. E.I. DuPont De Nemours & Co., Inc.,* C.A. No. 90-1867, 1992 WL 202169 at *1 (E.D.Pa. Aug. 12, 1992); *Shields Enterprises, Inc. v. First Chicago Corp.,* No. 86 C 10213, 1988 WL 142200 at *3 (N.D.Ill.Dec. 28, 1988); *Fien v. Numex Corp.,* 92 F.R.D. 94, 96 (S.D.N.Y.1981).

This Court agrees with the Honorable Ronald L. Buckwalter's decision in *Tetratec,* and concludes that non-parties do in fact have standing to raise relevancy objections.[FN2] Pursuant to Federal Rule of Civil Procedure 45, a party may compel a non-party to produce documents and/or appear at a deposition to give testimony. The subject matter of the discovery requested in a subpoena must, however, fall within the permissible scope of discovery. *See e.g.* Fed.R.Civ.P. 45(d) Advisory Committee's Note 1970 Amendment (stating that "the scope of discovery through a subpoena is the same as ... the other discovery rules"). Thus, the requested information/documents in the subpoena must be "relevant to the subject matter involved in the pending action...." Fed.R.Civ.P. 26(b)(1); *see also* 9A Miller & Wright, Federal Practice and Procedure, § 2459, at 42 (1995) (acknowledging that a subpoena may be quashed if it requests irrelevant matter).[FN3]

> FN2. Although the court in *Cooney* held that a non-party could not raise a relevancy objection, it did state that a non-party could raise a "burdensome" objection to a subpoena. 288 F.Supp. at 717. Nevertheless, as noted by the court in *Shields Enterprises,* it is difficult to comprehend how a "burdensome" objection will be evaluated without first weighing the relevancy of the requested discovery. 1988

WL 142200 at *3.

> FN3. Although the federal courts have adopted liberal discovery rules, district courts, nevertheless, are empowered with "broad discretion to manage discovery." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 734 (3d Cir.1995). In particular, federal courts have imposed broader restrictions on the scope of discovery when a non-party is targeted. *See Dart Industries Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir.1980). Accordingly, in *Tetratec,* Judge Buckwalter noted that " '[t]he rule is thus established that non-parties to litigation enjoy greater protection from discovery than normal parties.' " 1992 WL 202169 at *1 (quoting *Laxalt v. McCarthy,* 116 F.R.D. 455, 458 (D.Nev.1986)).

### 2. *Financial Information Requests*

In the present motion, the Glenmede Defendants seek production of every document in the possession of both Brown Brothers and Rittenhouse that pertains to the financial advice and services provided by these non-parties to the plaintiffs. The Glenmede Defendants argue that the requested discovery is necessary to "test" the following: (1) the plaintiffs' claims regarding financial sophistication and objectives; (2) whether the plaintiffs provided the Glenmede with complete information to enable Glenmede to properly advise the plaintiffs; (3) the reasons for plaintiffs' claim that they would have sold their Oryx stock if permitted to participate in the buy-back; and (4) the plaintiffs' alleged damages.

As previously mentioned, a discovery request must relate to the subject matter of the pending suit. Fed.R.Civ.P. 26(b)(1). The "subject matter" of this action is whether the Glenmede Defendants violated a fiduciary duty owed to the plaintiffs by failing to include the plaintiffs in the buy-back transaction, failing to advise the plaintiffs of a conflict-in-interest, and/or failing to advise the plaintiffs to sell their Oryx stock on the open-market at the conclusion of the buy-back transaction. Whether or not the defendants breached their fiduciary duty to the plaintiffs is dependant upon the facts and circumstances surrounding the relationship between Glenmede and the plaintiffs. The requested discovery, however, pertains to the plaintiffs' relationship with other investment firms that did not that start until after Glenmede was terminated and after this action had commenced. The discovery

Not Reported in F.Supp.                                                    Page 3
Not Reported in F.Supp., 1995 WL 752429 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

requests, therefore, are simply not germane to this action.

**\*3** The financial sophistication of the plaintiffs, the information provided by the plaintiffs to Glenmede to enable Glenmede to properly advise the plaintiffs, the reasons the plaintiffs would have sold their stock in the buy-back transaction, and the alleged damages are all relevant factors in this case.    Nevertheless, these factors must relate to the period in question-i.e., during the period that Glenmede owed the fiduciary duty to the plaintiffs.    Accordingly, the motion to compel discovery is denied and the subpoenas are hereby quashed.

An appropriate Order follows.

### ORDER

AND NOW, this 18th day of December, 1995, upon consideration of the Motion of Glenmede Defendants to Compel Discovery of Non-Party Witnesses Brown Brothers Harriman and Rittenhouse Financial Securities, Inc., IT IS HEREBY ORDERED that Motion is DENIED.

IT IS FURTHER ORDERED that the Subpoenas directed toward Brown Brothers Harriman and Rittenhouse Financial Securities, Inc. are hereby QUASHED. the Glenmede Defendants in this matter. In November, 1994, the Plaintiffs were granted leave to amend their Complaint to include claims against the Lawyer Defendants.

E.D.Pa.,1995.
Thompson v. Glenmede Trust Co.
Not Reported in F.Supp., 1995 WL 752429 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:92cv05233 (Docket) (Sep. 10, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                   Page 1
Not Reported in F.Supp., 1992 WL 202169 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**C**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
TETRATEC CORPORATION
v.
E.I. DUPONT DE NEMOURS & CO., INC.
**Civ. A. No. 90-1867.**

Aug. 12, 1992.

Peter F. Vaira, Buchanan Ingersoll Professional
Corporation, Philadelphia, Pa., Gerald D.W. North,
Caroline Barron, Peter C. Warner, Thomas S.
Howard, Gerald D.W. North & Associates, Phoenix,
Ariz., for plaintiff.
Gay Barlow Parks Rainville, John G. Harkins, Jr.,
Nina M. Gussack, Pepper, Hamilton & Scheetz,
Philadelphia, Pa., for defendant.

*MEMORANDUM AND ORDER*
BUCKWALTER, District Judge.
*1 Presently before the court is plaintiff Tetratec
Corporation's ("Tetratec") motion to compel
production of documents redacted by W.L. Gore and
Associates, Inc. ("Gore"), a non-party to this action.

Pursuant to this court's order on August 16, 1991,
Gore compiled and provided to Tetratec "thousands
of documents comprising over 29,000 pages...."
Gore Memorandum at 1. Gore redacted 70 of these
documents. Gore claims that it redacted documents
containing information which fell outside the scope
of the court's order. Gore requests that Tetratec's
motion be denied, or in the alternative, that the court
review the documents *in camera*. Tetratec claims
that Gore redacted critical information which it needs
to help prove its case. Tetratec requests that the
court order Gore to produce the documents "in toto"
or alternatively, for the court to review the documents
*in camera.*

Additionally, Tetratec wants Gore to refund $20,700
it believes Gore charged them for redacting the
documents. Gore denies this charge. Gore claims
that Tetratec's payment covered only copying costs
and personnel expenses to collect, review and
organize the documents. Tetratec also requests,
pursuant to Rule 37(a)(4), that the court order Gore to
pay its expenses for filing this motion.

For the following reasons, I will direct that the
redacted documents be produced for *in camera*
inspection. Additionally, Tetratec's motion for
sanctions will be DENIED. Tetratec's motion for
return of $20,700 will also be DENIED.

I. Production of Documents for *In Camera*
Inspection.

Gore claims that as a non-party, it is entitled to
greater protection from discovery than a party. As a
non-party, Gore argues that it has standing to object
to Tetratec's motion. Additionally, Gore argues that
it only redacted information that was either protected
by the attorney-client privilege or was outside the
scope of the court's August 16, 1991 protective order.
Gore Exhibit 3.

A. Status as a Non-Party.

Tetratec argues that Gore does not have standing to
raise an objection on relevancy grounds. Tetratec
Memorandum at 2. Tetratec cites *Main Line Paving
Co. Inc., v. Board of Education, School District of
Philadelphia,* to support this argument. This case,
however, only requires that one have standing if he
wishes to *sue.* 725 F.Supp. 1349, 1356
(E.D.Pa.1989). In *Fein v. Numex Corp.,* the court
held that a non-party can object to a discovery
request on relevancy grounds. 92 F.R.D. 94, 96
(S.D.N.Y.1981).

When ruling on discovery motions, courts have held
that non-parties are entitled to greater protection than
parties. Thus, although Gore is a non-party, it may
still object to Tetratec's motion. In *Laxalt v.
McClatchy,* the court stated, "[t]he rule is thus well
established that non-parties to litigation enjoy greater
protection from discovery than normal parties." 116
F.R.D. 455, 458 (D.Nev.1986); *see also Dart
Industries Co., v. Westwood Chemical Co.,* 649 F.2d
646, 649 (9th Cir.1980).

B. Attorney-Client Privilege.

*2 Gore claims that some of the redacted information
is protected by the attorney-client privilege. Tetratec

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1992 WL 202169 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

argues that Gore has not provided a list of privileged documents. Tetratec Memorandum at 1. Tetratec also notes that the protective order ensures confidentiality.

If a document is subject to the attorney-client privilege it is not discoverable. Fed.R.Civ.P. 26(b)(1). In *United Coal Companies v. Powell Construction Co.,* the Third Circuit, noting that the status of the attorney-client relationship determines the privilege not the party status, stated that a non-party can assert this privilege. 839 F.2d 958, 963 (3d.Cir.1988). The court went on to state "the key is whether the person asserting the privilege had a professional consultation with an attorney...." *Id.*

In *Cuno, Inc., v. Pall Corp.,* the District Court for the Eastern District of New York noted that:
In several instances limited portions of the documents have been held privileged. For example, where the document with respect to a given invention submission set forth a direction to counsel to pursue a legal course of action, or set forth a legal opinion of counsel, that portion of the document was held privileged. The balance of such documents, however, are to be produced. 121 F.R.D. 198, 204 (E.D.N.Y.1988).

In this case, Gore redacted one sentence on document number 00463. Gore Exhibit 1A. Gore claims that the sentence is a request for legal advice directed at Gore's in house counsel, John Campbell. It is unascertainable whether this question was actually discussed with or even seen by Mr. Campbell. To determine whether the sentence warrants application of the privilege, *in camera* inspection of the documents is an option. As the Third Circuit stated in *United Coal,* "the proper procedure for such consideration is ... *in camera* inspection by the court." 839 F.2d at 966. Similarly, the Supreme Court, ruling in a case where the government privilege was asserted, stated "it would seem that an *in camera* review of the documents is a relatively costless and eminently worthwhile method to ensure that the balance between petitioner's claim of irrelevance and privilege and plaintiff's asserted need for the documents is correctly struck." *Kerr v. United States Dist. Ct. for N. Dist. of Cal.* 426 U.S. 394, 405-6, 96 S.Ct. 2119, 2125 (1976).

C. Information Outside the Scope of the Court's August 16, 1991 Order.

Gore argues that the remaining redacted documents were edited because some of the information contained in those documents went beyond the scope of the court's order. Gore divides these documents into three categories: information regarding Gore's competitors, highly confidential technical information, and names of Gore customers. Tetratec argues that the redactions were improper. Tetratec does not believe the court's order gave Gore permission to redact documents.

1. Information Regarding Gore's Competitors.

*3 The court's August 16, 1991 order relieved Gore from producing information regarding other competitors. Gore Exhibit 3 para. f (referring to Tetratec's letter dated June 20, 1991). Tetratec had originally requested this information from Gore. Gore claims that some of the documents contained names of its competitors and therefore these documents were properly redacted.

2. Gore's Technical Information.

Tetratec originally requested technical information from Gore. Gore claimed that this information was highly confidential. The court quashed Tetratec's overly broad subpoena. In its August 16 order, the court limited Tetratec's document request for Gore's technical information. Defendant Exhibit 3. Gore argues that it properly redacted technical information which fell outside the scope of the order. Gore also claims that Tetratec must make a stronger showing of need before the court grants its motion. Gore claims that Tetratec has not made a strong showing of need; Gore claims that Tetratec only *believes* the redacted information is "relevant."

Gore expressed concern about allowing competitors and their experts to view this technical information. Although a protective order is in effect, Gore does not want Tetratec to see any more than what it has been ordered to produce. Gore cites a case which it believes adequately sums up its position. The court in *Greater Rockford Energy and Technology Corp., v. Shell Oil Co.,* believed that even if a protective order was issued, the risk of disclosure of confidential information still existed. 138 F.R.D. 530, 538 (C.D.Ill.1991). The court, quoting *Litton Industries v. Chesapeake & Ohio Ry.,* 129 F.R.D. 528, 531 (E.D.Wis.1990) held "[t]here is a constant danger inherent in disclosure of confidential information pursuant to a protective order.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 202169 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a nonparty is sought." *Id.* The defendant, seeking information from a non-party, argued that because the court issued a protective order, risk of disclosure was significantly reduced. However, the court found that disclosure of the non-party's records could have a devastating effect. The court also noted that once an expert was exposed to such information, it would be very unlikely that the expert would forget it if the discovering party (or others) desired to use it at a later date. *Id.*

### 3. Information About Gore's Customers.

Gore argues that the remaining redacted documents are documents which contain the names of Gore's customers. There are three situations in which Gore removed the name of the customer: 1) a Gore customer supplied samples of Tetratec's products to Gore on the condition that his name would not be revealed; 2) the customer is one for whom both Gore and Tetratec are currently competing and the documents refer to current pending matters; and 3) the Gore customer is involved in a dispute on a matter unrelated to Tetratec.

*4 Gore claims that these names are outside the scope of the August 16, 1991 order and are highly confidential. Gore believes that disclosure of this information could be "devastating." Gore Memorandum at 12. Gore claims that the names are the only missing information from the documents. It believes that the documents are clear and understandable without them.

Tetratec argues, however, that they have a strong need for this information. Tetratec believes the information may be necessary to prove the connection between DuPont and Gore. Tetratec claims that it "cannot fathom how Gore can determine that the notes and other terms of the partnership, including a partner's identity can be immaterial in an antitrust case in which a conspiracy between DuPont and Gore is alleged...." Tetratec Memorandum at 5.

Tetratec believes that all of the redacted material is relevant because it shows the "pervasiveness of the DuPont/Gore combination. Gore's editing seeks to conceal sources of evidence by which Tetratec will prove its case against DuPont, Gore's partner." Tetratec Memorandum at 6. Tetratec questions

Gore's authority to decide what is relevant or irrelevant and to redact the documents accordingly. Citing *Sellon v. Smith,* Tetratec argues that Gore should not be the "final arbiter of what is relevant or irrelevant in a particular document." 112 F.R.D. 9, 13 (D.Del.1986). In *Sellon,* the court held that the producing party was not allowed to determine what to redact. To justify its position, the court noted that some redactions resulted in difficulty in determining the meaning of the documents, the possibility that information was deleted in error, and the possibility that information would be understood out of context. *Id.*

In this case, there is no way to determine whether the competitor information, technical information, or customer information had to do with DuPont or was otherwise within the scope of the discovery order. Gore claims that it complied with the August 16 order and that the redacted information fell outside the scope of the order. However, because both parties suggest ("in the alternative") that the court review the documents *in camera,* this motion should be granted in order to determine whether Gore properly redacted the documents.

### II. Tetratec's Motion for Sanctions Will Be Denied Because It has Not Been Determined That Gore Violated the Discovery Order.

Tetratec requests, pursuant to Rule 37(a)(4), that the court order Gore to pay its attorney's fees for bringing this action. Tetratec believes that Gore is trying to "tax" its resources, thus violating the spirit of this court's order. Tetratec points out that Gore's concern regarding confidentiality is not warranted due to the protective order issued by this court. Tetratec believes that Gore's actions have been in bad faith.

Rule 37(a)(4) provides:
Award of Expenses of Motion. If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
*5 ...

The Advisory Committee Notes following Rule 37

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 202169 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

note that a party *or* deponent may be sanctioned for not following a discovery order. The test for whether to grant the motion for sanctions is whether the party or person's acts of noncompliance were substantially justified.

In *Metal Marketplace v. United Parcel Service,* the court listed several factors used to determine whether the court should order the noncomplying person or party to pay the expenses of the other party. The court considers "the extent of the offending party's responsibility, other dilatory conduct, the party's motive or state of mind, prejudice to the innocent party and the appropriateness of alternative sanctions." 733 F.Supp. 976, 981-2 (E.D.Pa.1990).

In this case, the motion for sanctions will be denied. First, the issue of whether Gore complied with the discovery order has not been settled. Second, Gore explained its reasons for redacting the various categories of documents. Gore claims that one document was protected by the attorney-client privilege. The remaining document redactions included technical information, information on Gore's competitors, and names of Gore's customers.

Tetratec has not complained that Gore failed to supply documents required by the order; it has complained because some of the documents have been redacted. The August 16 order instructed Gore on which technical documents it must supply and Gore argues that it redacted the documents in accordance with this order. Also, the order specifically stated that Gore did not have to provide any documents regarding its competitors. The order does not require production of information regarding Gore's customers. As a result, Gore believes that any information regarding its competitors is beyond the scope of the order. As long as the redacted information falls outside the scope of the order (to be determined during *in camera* inspection), the order has not been violated and sanctions are not warranted.

### III. Tetratec's Claim That Gore Charged It For Redacting the Documents is Not Supported By the Evidence.

Tetratec claims that Gore overcharged it $20,700. Tetratec claims that Gore refused to account for the $20,700. Tetratec Memorandum at 8. Tetratec believes that Gore charged it for the labor expended to redact the documents. Gore denies these claims. Gore claims that copying costs amounted to $7,300

and the balance, $20,700, covered personnel costs in gathering the documents.

Gore sent a letter to Tetratec stating that over $20,000 was spent for personnel costs "searching and retrieving relevant files, and retrieving and collecting relevant documents." Tetratec Exhibit G. Gore offered to supply a "verified statement that Gore's costs actually exceeded $28,000." if this was necessary, but also said it would not break down its costs any more than it had in the letter. Gore offered no additional documentation of the original costs until it filed a reply memorandum to Tetratec's motion. In this memo, Gore included a declaration from its in-house counsel, John S. Campbell, who stated that the total cost of compiling the documents was $28,000. Campbell also declared that Gore did not charge Tetratec for any of the costs of editing the documents. Gore Exhibit 4.

**\*6** Gore also referred to the declarations of Ms. Dore (outside counsel), and Mr. Brower (outside accountant) who, in response to Tetratec's opposition to Gore's Bill of Costs, testified to this claim (September 24, 1991).

Tetratec bases its claim only on its "belief" that Gore charged it for redacting the documents. Tetratec Memorandum at 8. Gore points to Tetratec's lack of support to prove this claim and has offered to make a breakdown of the actual costs available to Tetratec. For these reasons, Tetratec's motion for Gore to refund $20,700 will be denied.

An order follows.

### ORDER

AND NOW, this 11th day of August, 1992, in consideration of Tetratec's Motion to Compel Production of Documents Redacted by Gore, and Gore's response thereto, it is hereby ORDERED that Gore produce one set of the redacted documents setting forth in an accompanying memorandum its reason for each redaction and one set of the unredacted documents in question at 4:30 p.m. on September 21, 1992 in the chambers of the undersigned for *in camera* inspection.

The supporting memorandum referred to above shall be submitted to Tetratec no later than September 11, 1992 so that it can submit a reply by September 21, 1992. It is the intent of this order that counsel for Tetratec and Gore personally appear on September

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 202169 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

21, 1992 as aforesaid.

E.D.Pa.,1992.
Tetratec Corp. v. E.I. Dupont De Nemours & Co., Inc.
Not Reported in F.Supp., 1992 WL 202169 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:90cv01867 (Docket) (Mar. 16, 1990)

END OF DOCUMENT

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| KRISTY LAW, QUINCY BULLARD, JOHN HALL, FRANCES PERRY, RITA LEE on behalf of themselves and all other persons similarly situated, | Case No.: 3:05-0836 (Middle District of Tennessee) Miscellaneous File Number |
| Plaintiff, | |
| v. | |
| AMERICAN CAPITAL STRATEGIES, LTD., | |
| Defendant. | |

**CERTIFICATION OF COUNSEL RE MEET AND CONFER COMPLIANCE**

I, STEVEN J. KAHN, declare, swear and aver:

1.    I am attorney at law duly licensed to practice before all courts in the State of California and all District Courts in the State of California. I am of counsel to the law firm of Pachulski Stang Ziehl Young Jones & Weintraub LLP, attorneys for non-party Movant, Service Transport, Inc. The facts stated herein are of my own personal knowledge, and if called upon as a witness, I could and would competently testify thereto.

2.    On August 22, 2006, I caused a letter to be delivered by facsimile, email and overnight mail to Rene S. Rupinion, Esq., counsel for the Plaintiffs in the above-encaptioned matter as required by FRCP 26(c) in an effort to resolve, in good faith, the dispute outlined in the concurrently filed Motion by Non-Party for Protective Order Relating to Subpoena without court

action. A true and correct copy of said correspondence is attached hereto and incorporated

herein by reference as Exhibit "A."

      3.     As of the time of my execution of this certification, I have received no

contact from Plaintiffs' counsel.

      I declare under penalty of perjury that the foregoing is true and correct. Executed

this 24th day of August, 2006, at Los Angeles, California.

Steven J. Kahn

# Exhibit A



PACHULSKI
STANG
ZIEHL
YOUNG
JONES
WEINTRAUB

L A W   O F F I C E S
LIMITED LIABILITY PARTNERSHIP
LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
11th FLOOR
LOS ANGELES
CALIFORNIA 90067-4100

TELEPHONE: 310/277 6910
FACSIMILE: 310/201 0760

August 10, 2006

skahn@pszyjw.com
(310) 203-3112

**Email, Facsimile and Fed Express**

Rene S. Roupinion, Esq.
Lankenau & Miller, LLP
1775 Broadway, #610
New York, NY  10019

   **Re: Law et al v. American Capital Strategies, Ltd.**
      **Civil Action No. 3:05-CV-0836**

Dear Ms. Roupinion:

   This letter is sent in an effort to meet and confer with you pursuant to Rule 26(c) relating to the subpoena served on our firm (the "Firm") on August 15, 2006 so as to attempt to avoid the necessity of the filing of a motion for protective order.

   Category One:  I have been advised that literally thousands of email communications will have to be reviewed in order to identify and isolate communications responsive to the request.  In addition, no small portion of those emails are no longer in the "Outlook" program and would have to be recreated from backup tapes in a laborious and costly process at an expense in excess of $40,000 for retention of an outside service to perform the initial retrieval and sort search and no less than 100 hours of attorney and paralegal time to review and sort those documents and create a privilege log.  The debtor's estates presently lack sufficient liquidity to fund this process, and to the extent the expense is to be borne by the firm as opposed to the debtors' estates, it is manifestly unjust, burdensome and oppressive that such costs would have to be so incurred.  Further, the communications with American Capital Strategies, Ltd. ("ACS") should be requested from that entity as a party to the litigation, as opposed to nonparties and their counsel.  However, if Plaintiffs are willing to bear the expense of the production, we will coordinate same with you.

SAN FRANCISCO
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500
TELEPHONE: 415/263 7000
FACSIMILE: 415/263 7010

DELAWARE
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705
(Courier Zip Code 19801)
TELEPHONE: 302/652 4100
FACSIMILE: 302/652 4400

NEW YORK
780 THIRD AVENUE
36th FLOOR
NEW YORK
NEW YORK 10017-2024
TELEPHONE: 212/561 7700
FACSIMILE: 212/561 7777

WEB: WWW.PSZYJW.COM

80960-001\DOCS_LA:156311.1

PACHULSKI
STANG
ZIEHL
YOUNG
JONES
WEINTRAUB

L A W   O F F I C E S

Rene S. Roupinion, Esq.
August 10, 2006
Page 2

Category Two:  The documents requested in Category Two
go far beyond permissible discovery as defined in Rule 26(b)(1) in
that the request patently seeks clearly privileged matter which is
exempt from discovery.  Further, even the costs associated with the
preparation of a privilege log is prohibitive to the bankruptcy estates
and a burdensome and oppressive expense which this firm should
not be required to incur.  Further, the scope of the request (all
communications "relating to the bankruptcy filing of Service
Transport, Inc."), is overly broad in that the only potentially relevant
documentation would relate to notices of termination of Service
Transport, Inc. employees in or about May 5, 2005.  The request
should be withdrawn.

Category Three:  Again, these documents should be
requested from party defendant ACS and not from this firm, and
neither the Debtor's estates nor the firm should be burdened with the
expense attendant to the review of the thousands of documents
generated during the subject period which may contain responsive
information.  Additionally, as with Category Two, the scope of the
request is overbroad as it far exceeds communications which relate
to the subject notices of termination.  Nevertheless, and once again,
if Plaintiffs are willing to undertake the expense for such a review
and production, we will coordinate with you.

Because of the timing of the subpoena, I will need to have a
response from you no later than the close of business on
Wednesday, November 23, 2006.

Thank you for your attention to the above.

Very truly yours,

Steven J. Kahn

SJK:sm

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KRISTY LAW, QUINCY BULLARD, JOHN HALL, FRANCES PERRY, RITA LEE on behalf of themselves and all other persons similarly situated, | Case No.: 3:05-0836 (Echols) (Middle District of Tennessee) Miscellaneous File Number |
| Plaintiff, | |
| v. | Miscellaneous Action on a Rule 45 Subpoena in a Civil Case |
| AMERICAN CAPITAL STRATEGIES, LTD., | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I, Sandra G. M. Selzer, hereby certify that on the 24th day of August, 2006, I

caused a copy of the following documents to be served on the individuals on the attached service

list in the manner indicated:

**MOTION BY NONPARTY FOR PROTECTIVE ORDER
RELATING TO SUBPOENA**

Sandra G. M. Selzer (Bar No. 4283)

**Service Transport – Law v. ACAS**
**Motion for Protective Order List**
**Document No. 120849**
**01 – Hand Delivery**
**02 – Overnight Mail**

*(Hand Delivery)*
Steve Kortanek
Klehr, Harrison, Harvey,
Branzburg & Ellers LLP
919 Market Street
Suite 1000
Wilmington, DE 19801

*(Overnight Mail)*
(Counsel for Kristy Law, Quincy Bullard,
John Hall, Frances Perry and Rita Lee)
Rene Roupinian, Esq.
Lankenau & Miller, LLP
1775 Broadway, Suite 610
New York, NY 10019

*(Overnight Mail)*
(Counsel for American Capital
Strategies, LTD)
David Maria, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206